**FILED**
**May 05, 2026**
**01:50 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| **Jeffrey Varble,** <br>       **Employee,** <br> **v.** <br> **AZCO, Inc.,** <br>       **Employer,** <br> **and** <br> **Liberty Mutual Ins. Co.,** <br>       **Carrier.** | **Docket No. 2025-60-3349** <br><br> **State File No. 88820-2023** <br><br> **Judge Kenneth M. Switzer** |

## COMPENSATION ORDER

The Court held a compensation hearing on April 29, 2026, in this accepted claim. The sole dispute was the amount of temporary disability benefits to which Jeffrey Varble is entitled. For the reasons below, the Court awards $3,982.48 in these benefits, along with permanent partial disability and open future medicals.

### Claim History

Mr. Varble, an electrician, injured his left arm and elbow at work for AZCO on October 16, 2023. He reported the claim the same day and initially treated via telemedicine and with providers at an onsite clinic. Mr. Varble said he continued working under the instruction, "If it hurts, don't do it at work." Then in mid-November, the general foreman told Mr. Varble that he was no longer needed as a foreman—a "demotion." Mr. Varble's employment with AZCO ended in January 2025.

Ultimately Mr. Varble treated with orthopedist Dr. James Rubright, who placed work restrictions in February 2024 and performed surgery in July. Dr. Rubright removed the restrictions on January 9, 2025, and assigned maximum medical improvement on February 13. He placed a 3% impairment rating with no permanent work restrictions. AZCO agreed to Mr. Varble's entitlement to

1

permanent partial disability benefits using a compensation rate of $1,224.93. Mr. Varble waived any claim for increased benefits.

At trial, the Court compared the parties' calculations and pointed out occasional transcription/math errors, to which they generally agreed. But the parties contested three periods involving Mr. Varble's temporary total and partial disability.

First, from November 20 through December 10, 2023, Mr. Varble worked fewer hours. He testified that per his best recollection, thunderstorms occurred during this time, and AZCO sent its employees home early.

Second, on July 9, 2024, Dr. Rubright performed surgery and took Mr. Varble completely off work on that date until July 17, when he re-imposed the restrictions. AZCO had paid temporary disability for several months by then, but it did not pay Mr. Varble from July 9-15, or seven days. Then, for the next two days, it paid temporary total disability before resuming temporary partial disability.

Third, for the week beginning January 7, 2025, AZCO paid Mr. Varble temporary partial disability benefits on January 7, 8, and 9. Payments then stopped because Dr. Rubright released him to work without restrictions on January 9.

### Findings of Fact and Conclusions of Law

Mr. Varble must prove entitlement to past temporary disability benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2025).

The workers' compensation statutes provide two types of temporary disability benefits: temporary total and temporary partial disability benefits. *Id.* § 50-6-207.

Temporary total disability benefits are paid when an employee is completely taken off work due to a work injury. *See Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Temporary partial disability benefits are paid when an employee is not totally disabled from work but restricted due to a work injury. *Id.* When the treating physician has released the employee to return to work with restrictions before the employee reaches maximum recovery, and the employer cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.* at *8.

Looking at the first contested period, from November 20 through December 10, 2023, Mr. Varble worked fewer hours because thunderstorms occurred during this time and AZCO sent its employees home early.

Courts deciding whether an employee is entitled to temporary partial disability use a similar analytical framework as when deciding whether an employee makes a meaningful return to work and seeks increased benefits. *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *12 (July 2, 2016).

In *Marshall v. Mueller Co.,* the Appeals Board held that in defining "wages," the General Assembly did not intend that an employee receiving a "summer hours' bonus" or a "shift differential" at the time the employee suffers a work injury be entitled to increased benefits. 2016 TN Wrk. Comp. App. Bd. LEXIS 74, at *23 (July 11, 2016). They reasoned in part that the employee's reduction in wages was the result of a summer hours' bonus and "*applie[d] to all employees* working in certain departments[.]" *Id.* at *25 (Emphasis added).

Considering this authority, the Court finds that Mr. Varble and other similarly-situated employees were sent home due to thunderstorms. This was unrelated to his work injury. Therefore, he has not shown by a preponderance of the evidence that he is entitled to benefits for this time.

Next, on July 9, 2024, Dr. Rubright performed surgery and took Mr. Varble completely off work until July 17, when he re-imposed temporary restrictions. AZCO did not pay Mr. Varble for the first seven days, from July 9-15. For the next two days, it paid temporary total disability.

AZCO argued that under section 50-6-205(a), no payment was due for the first seven days of his post-surgery temporary total disability. That statute says:

> No compensation shall be allowed for *the first seven (7) days of disability resulting from the injury, excluding the day of injury, . . .* but if disability extends beyond that period, compensation shall commence with the eighth day after the injury. In the event, however, that the disability from the injury exists for a period as long as fourteen (14) days, then compensation shall be allowed beginning with the first day after the injury.

(Emphasis added).

Here, AZCO had already initiated benefits shortly after Mr. Varble's work injury occurred—temporary partial covering the week of January 8 to January 14, 2024—and continued to pay them as required until the date of surgery. By the Court's plain reading of the statute, "*the first seven (7) days of disability resulting from the injury, excluding the day of injury,*" had already occurred several months before the surgery took place. This entitled Mr. Varble to temporary total disability benefits in the amount of $1,224.93 for those seven days, when he was completely off work. He has shown entitlement to these benefits for this period by a preponderance of the evidence.

Finally, AZCO argued Mr. Varble was due temporary partial disability benefits on January 7, 8, and 9 but that payments should be stopped when Dr. Rubright removed all restrictions on January 9. Temporary disability benefits are terminated by the ability to return to work. *Jones,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48 at *7. Therefore, AZCO is correct. Mr. Varble has not shown entitlement to additional benefits beyond January 7, 8, and 9 for this week by a preponderance of the evidence.

To recap, the chart below shows the temporary disability benefits owed, based on the parties' partial agreement and the above rulings.

| Dates | Average Weekly Wages | Actual Wages | Difference | Temporary Partial Disability |
|---|---|---|---|---|
| 1/8/24-1/14/24 | 1837.30 | 1231.04 | 606.26 | 404.37 |
| 1/15/24-1/21/24 | 1837.30 | 1172.74 | 664.56 | 443.26 |
| 1/28/24-2/4/24 | 1837.30 | 1213.26 | 624.04 | 416.23 |
| 6/10/24-6/16/24 | 1837.30 | 1825.34 | 11.96 | 7.97 |
| 7/1/24-7/7/24 | 1837.30 | 1469.61 | 367.69 | 245.25 |
| 7/15/24-7/21/24 | 1837.30 | 982.92 | 856.38 | 571.20 |
| 7/28/24-8/4/24 | 1837.30 | 1692.67 | 144.63 | 96.47 |
| 11/4/24-11/10/24 | 1837.30 | 1685.87 | 151.43 | 101.00 |
| 11/25/24-12/1/24 | 1837.30 | 1469.81 | 367.49 | 245.11 |
| 1/6/25-1/12/25 | | | | 226.69 |
| | | | Total | $2,757.55 |

As to Mr. Varble's allegations about the handling of his claim, AZCO agreed that it did not notify the carrier within the timeframe allowed in Bureau rules. It

further acknowledged that it did not timely offer a physician panel or timely make a written settlement offer.  The Court refers AZCO to the Compliance Program for the imposition of penalties for these rule violations.

**IT IS, THEREFORE, ORDERED as follows:**

1. Mr. Varble is entitled to $2,757.55 in past temporary partial disability benefits, and $1,224.93 in past temporary total disability benefits, for a total of $3,982.48, immediately payable in a lump-sum.

2. Mr. Varble's permanent partial disability benefits is $16,536.56 (3% x 450 weeks x $1,224.93), immediately payable in a lump-sum.

3. Mr. Varble is entitled to future open medical benefits with Dr. Rubright for reasonable, necessary and work-related treatment.

4. This case is referred to the Compliance Program for the imposition of civil penalties as outlined above.

5. AZCO shall pay the $150.00 filing fee within five business days of entry of this order, for which execution may issue if necessary.

6. AZCO shall file a Statistical Data Form (SD-2) within ten business days of this order becoming final.

7. Unless appealed, this order shall become final 30 days after entry.

**ENTERED May 5, 2026.**

*Kenneth M. Switzer*

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**
**Exhibits:**
1. Deposition of Dr. Rubright
2. The parties' calculations of temporary partial disability benefits with handwritten notes made by the Court before the trial; numbers adjusted in the final order.

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on May 5, 2026.

| Name | Email | Sent to |
|------|-------|---------|
| Jeffrey Varble, employee | X | ███████████████ |
| Emily Pfeiffer, employer's attorney | X | Emily.pfeiffer@libertymutual.com |
| Compliance Program | X | WCCompliance.Program@tn.gov |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

**Tennessee Bureau of Workers' Compensation**
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s) (Requesting Party):** _____ ☐Employer ☐Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*